PREEMPTION DEVICES,
INC., Appellant,

v.

MINNESOTA MINING & MANUFAC-
TURING COMPANY, Appellee.

Appeal No. 86–690.

United States Court of Appeals,
Federal Circuit.

Sept. 24, 1986.

---

**2.** Although it is conceivable that *Hudson* may be limited to deprivations of property, we need not

address this issue.

Roger W. Herrell and Robert G. McMorrow, Jr., Dann, Dorfman, Herrell and Skillman, Philadelphia, Pa., submitted for appellant.

Joel S. Goldhammer, Seidel, Gonda, Goldhammer & Abbott, P.C., Philadelphia, Pa., argued for appellee. With him on brief was Steven J. Rocci. Also on brief was Terryl K. Qualey, Minnesota Mining and Manufacturing Co., St. Paul, Minn.

Before DAVIS, SMITH and NIES, Circuit Judges.

DAVIS, Circuit Judge.

Preemption Devices, Inc. (PDI) appeals from the decision of the United States District Court for the Eastern District of Pennsylvania, 630 F.Supp. 463 (E.D.Pa. 1985), holding it in contempt of that court's judgment order of March 19, 1983, as amended April 25, 1983, granting a permanent injunction against the infringement of United States Patent No. Re. 28,100 (the Long patent). We affirm-in-part, vacate-in-part, and remand.

### I.

The Long patent, Re. 28,100 was originally U.S. Patent No. 3,550,078, which issued on Dec. 22, 1970 to William H. Long. The patented invention relates to systems for controlling vehicular traffic at street and highway intersections, and more particularly relates to means for remotely operating and effecting traffic control systems. For a detailed review of the patented invention, see the prior opinions of the District Court, *Preemption Devices, Inc. v. Minnesota Mining and Mfg. Co.*, 559 F.Supp. 1250, 1253–54, 1262 (E.D.Pa.1983), *affirmed* by this court, 732 F.2d 903, 221 USPQ 841 (Fed.Cir.1984).

This action was originally initiated in 1980 by PDI against appellee, Minnesota Mining and Manufacturing Company (3M), seeking a declaration that the Long patent was invalid.[1] The District Court in a Memorandum Opinion dated March 18, 1983, as amended by the order dated April 25, 1983, found claims 1, 3–7 and 9–10 of the Long patent valid and infringed. The April 25, 1983 order provided in pertinent part:

> That the plaintiff, its officers, employees and agents, are permanently enjoined from making, using or selling, or offering for sale, light activated traffic signal remote control systems or components in infringement of U.S. Letters Patent No. Re. 28,100, specifically including the components of such systems identified . . . as "Phase Selector" . . . "Two Way Optical Detector" . . . and "Optical Emitter Controller". . . .

The components of PDI's infringing system specified in the injunction were, respectively, the model PSO–1 phase selector, the model OR–1/OR–2 optical detector and the model OE–29 optical emitter. Collectively, these components are called the PSO–1 phase selector system.

Sometime later, 3M began contempt proceedings against PDI, seeking sanctions for PDI's allegedly willful and knowing violation of the injunction, as amended April 25, 1983. Violations enumerated by 3M included (1) PDI's sales of the OE–29 optical emitter, the OR–1 and OR–2 optical detectors (OR detectors)[2] and the PSO–1 phase selector, into infringing systems; (2) PDI's offer for sale of its newly designed PD–1 and PD–2 preemptors, LS–164 optical emitters and OD–155 optical detectors; and (3) PDI's sales and offer for sale of a model 262 discriminator or preemption device. After a hearing, the District Court found PDI's sale and offer for sale of the OE–29 emitter and the OR detectors to be contemptuous conduct which violated the terms of the injunction prohibiting contributory infringement. PDI's sale and offer for sale of the PSO–1 phase selector systems was also held contemptuous. With respect to the modified LS–164 emitter and OD–155 optical detector, the District Court found that the devices were colorably the same as the OE–29 emitter and the OR detectors, respectively, and that they performed substantially the same function in substantially the same way as the earlier devices. On that ground, the District Court held contemptuous PDI's offer for sale of these modified devices. Finding that the PD–1 and the PSO–1 selectors perform substantially the same function in substantially the same way and that the selectors are colorably the same, the District Court also held contemptuous PDI's sale of the PD–1 device.[3] This appeal ensued.

### II.

■ Civil contempt is one mechanism through which a court may enforce its proper powers, and is recognized as a severe remedy. In such a civil contempt

---

1. PDI admitted infringement if the Long patent was valid.

2. For purposes of this opinion, the OR–1 and OR–2 are the same.

3. The court found that the PDI 262 discriminator was more than colorably different from the PSO–1 system and that the PD–2 selector differed more than colorably from the PSO–1 selector. PDI's sales or offer for sale of these devices were held not in violation of the April 25, 1983 injunction.

proceeding, the movant has the heavy burden of proving violation of the District Court's order by clear and convincing evidence. *KSM Fastening Systems, Inc. v. H.A. Jones Co.,* 776 F.2d 1522, 1524, 227 USPQ 676, 677 (Fed.Cir.1985). If there is a fair ground of doubt as to the wrongfulness of the defendant's actions said to be in contempt, the District Court should not entertain the civil contempt proceeding or find contempt. *MAC Corp. of America v. Williams Patent Crusher and Pulverizer Co.,* 767 F.2d 882, 885, 226 USPQ 515, 517 (Fed.Cir.1985). Here, the District Court correctly stated the standard of proof and correctly allocated the burden of proof to 3M. We now review the case to determine if, as PDI contends, the District Court clearly erred in finding that PDI's sales and offer for sale of certain PDI devices were in contempt of the April 25, 1983 injunction.[4]

A. *Devices specified in the injunction*

The devices which were specified in the April 25, 1983 injunction and as to which PDI's subsequent offers for sale (or sales) were held by the District Court to be contemptuous included:

(1) the OE–29 optical emitter;

(2) OR detectors; and

(3) the PSO–1 phase selector.

PDI challenges the District Court's findings with respect to these devices as clearly erroneous. The argument is that 3M failed to prove direct infringement by PDI's transactions and that, despite the requirements of 35 U.S.C. § 271(c), 3M failed to show that PDI knowingly supplied components into infringing systems.

*Direct Infringement:* The District Court recognized the well-settled principle stated in *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 345, 81 S.Ct. 599, 604, 5 L.Ed.2d 590 (1961) (*Aro I*), that contributory infringement cannot exist in the absence of a showing of direct infringement. Therefore, in reaching the conclusion that PDI's sale or offer of sale of the OE–29 emitter, OR detectors, and PSO–1 selector violated the injunction against contributory infringement of the Long patent, the District Court necessarily found that there was direct infringement of the patent. Were these findings clearly erroneous?

■ Credible evidence revealed that, subsequent to the April 25, 1983 injunction, PDI, through one of its dealers, delivered an OE–29 emitter in Champaign, Illinois, and also that PDI had previously sold an infringing phase selection system to the City of Champaign.[5] There was no evidence that the City of Champaign had ever purchased a phase selection system other than this infringing system. Coupling this evidence with evidence that the emitter has no practical use other than in an optical phase selection system,[6] the District Court found that the emitter was sold for use into an infringing system. This finding was not clearly erroneous.

PDI sold OR optical detectors through its dealers, Brown Traffic Products and Bbuddco, after the injunction. There was confusing evidence as to the ultimate purchasers or destination of the devices. However, the District Court found, based on the evidence before it, that "3M has adequately shown that there [was] no relevant market for the OR detectors apart from the use in a phase selection system." This finding was not clearly erroneous. In particular, there was evidence that, during the relevant time, only 3M and PDI sold optical phase selector systems and supplied components designed to be used in these systems. Further, evidence showed that 3M had a policy of not selling components for use in systems having components supplied by anyone other than 3M. Here,

---

**4.** The clearly erroneous standard applies to findings of civil contempt where the correct legal standards for a contempt proceeding are employed. *MAC Corp. of America,* 767 F.2d at 885, 226 USPQ at 517.

**5.** *See* Testimony of Mr. Manchester, Jt.App. at 444.

**6.** *See* Testimony of Dr. Parsonson, Jt.App. at 408.

again, inferences properly drawn from the evidence as a whole support the finding that PDI's OR detectors were sold for use in an infringing PDI system, since (in the absence of evidence to the contrary) it is likely that a holder of a 3M system would not purchase component parts from anyone except 3M.[7]

The final item specifically mentioned in the injunction and sold by PDI subsequent to the injunction was PDI's PSO-1 phase· selector. PDI shipped six optical PSO-1 selectors after the injunction. While the customers refused acceptance pending the outcome of litigation, PDI deliberately disregarded the injunction by actually delivering the selectors. The District Court found and it is undisputed that the PSO-1 selectors cannot be used for any substantial noninfringing use and that the phase selector was designed only for use in an unlicensed system.

■■■ For the reasons we have just given, the District Court correctly found direct infringement of the devices specifically mentioned in the injunction in connection with its finding of contributory infringement.

*Contributory Infringement:* 35 U.S.C. § 271(c) provides:

Whoever sells a component of a patented ... combination ... constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

Under this provision, one must show that an alleged contributory infringer knew that the combination for which his components were especially made was both patented and infringing. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488–91, 84 S.Ct. 1526, 1532–34, 12 L.Ed.2d 457 (1964) (*Aro II*). The District Court,

recognizing this requirement of knowledge (as mandated by *Aro II* (*see* 630 F.Supp. at 471–72)), found that PDI had the requisite knowledge with regard to the various transactions in issue. PDI argues that the District Court erred in so finding because 3M did not prove that PDI had knowledge that the component parts would be used in an unlicensed and infringing system. In view of evidence that there were only two phase selector systems available at the relevant time—3M's patented system and PDI's infringing system—and that there was no available market for PDI's components except in PDI infringement systems, we are not persuaded by this argument. Indeed, PDI admitted infringement in the original suit.

Section 271(c), *supra*, also requires a showing that a component especially made or adapted for use in the patented combination is not a staple article suitable for substantial noninfringing use. *Aro II*, 377 U.S. at 485–88, 84 S.Ct. 1526, 1531–33, 12 L.Ed.2d 457. The District Court expressly found that the PSO-1 selector had no substantial noninfringing use which therefore made it a non-staple article. This finding was certainly not clearly erroneous. However, with respect to the OE-29 emitter and the OR detectors, the District Court, though finding that PDI consciously intended to violate the injunction, failed explicitly to make the staple/non-staple distinction.[8] However, PDI, in its appeal to this court, does not raise that point and we shall not consider its relevance to this particular case.

PDI has urged that the sales of the PSO-1 devices were for purposes of repair and replacement. The District Court could reject this argument in light of credible evidence that PDI actually sold the phase selectors to sell off inventory. *See* 630 F.Supp. at 474. Moreover, PDI concedes that repair or servicing of previously sold

---

7. The District Court expressly refused to draw the inference that a holder of the 3M system would purchase component parts from PDI. 630 F.Supp. at 473.

8. 3M had urged that the components at issue were all non-staples.

PSO-1 phase selectors was infringement of the Long patent.

B. *Devices not specifically mentioned in the injunction.*

PDI's modified devices which were not specifically mentioned in the injunction, but as to which the sale or offer for sale by PDI was held to violate the injunction, were these:

(1) the LS–164 optical emitter;

(2) the OD–155 optical detector; and

(3) the PD–1 preemptors.

In determining violation of the injunction by these devices, the District Court applied the standard set forth in *Interdynamics, Inc. v. Firma Wolf,* 653 F.2d 93, 210 USPQ 868 (3d Cir.), *cert. denied sub nom. Trans Tech, Inc. v. Interdynamics Inc.,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981) (*Interdynamics I*), and *Interdynamics, Inc. v. Firma Wolf,* 698 F.2d 157, 217 USPQ 117 (3d Cir.1982) (*Interdynamics II*). The court held that the accused devices were merely colorably different from the respective enjoined devices when compared under the "doctrine of equivalents": [9]

> To determine whether the allegedly contumacious product is colorably different from the enjoined device, the court must see if the "two devices do the same work in substantially the same way, and accomplish substantially the same result ... even though they differ in name, form, or shape." *Interdynamics I,* 653 F.2d at 99.

630 F.Supp. at 469.

The difficulty is that, subsequent to the District Court's decision, this court, in *KSM Fastening Systems, Inc. v. H.A. Jones Co.,* 776 F.2d 1522, 227 USPQ 676 (Fed.Cir.1985) (*KSM*), squarely rejected this standard adopted by the *Interdynamics* courts and held that

> [N]o correlation between infringement by the accused device and by the adjudged device necessarily exists as a result of their equivalence to each other

under the modified standard of *Interdynamics.*

In making a finding that the accused new device is an infringement, the court cannot avoid looking at the claims of the patent. It may, in some cases only be necessary to determine that the modified device has not been changed from the adjudged device in a way which affects an element of a claim.

*KSM,* 776 F.2d at 1528–29, 227 USPQ at 681.

■ "Infringement is the *sine qua non* of violation of an injunction...." *KSM,* 776 F.2d at 1528, 227 USPQ at 680. In the case before us, the District Court failed to refer at all to the claims of the Long patent in making its findings of infringement by the modified PDI devices. 3M now says that the court must have found actual infringement, and that we should not remand. But *KSM,* which is the law of this court and binding on this panel, expressly holds that

> [a] judgment of contempt against an enjoined party for violation of an injunction against patent infringement by the making, using or selling of a modified device may not be upheld without a finding that the modified device falls within the admitted or adjudicated scope of the claims and is, therefore, an infringement.

776 F.2d at 1530, 227 USPQ at 682. *KSM* was remanded for that very reason, and we must follow suit since the District Court has given no indication whatever that it considered the patent claims themselves. Accordingly, we remand to the District Court to make findings whether the accused new PDI devices infringe the claims of the Long patent.

### Conclusion

We affirm the District Court's determinations that PDI's sales or offers to sell of the PSO–1 selectors, the OE–29 emitter, and the OR detectors were in violation of

---

**9.** This doctrine was adapted from the doctrine of equivalents announced by the Supreme Court in *Graver Tank & Mfg. Co. v. Linde Air Products*  *Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950).

the April 25, 1983 injunction against contributory infringement and were therefore contemptuous. We remand to the District Court to determine whether PDI's transactions involving the modified LS–164 optical emitter, OD–155 detector and PD–1 preemptor infringed the Long patent. Until the proper findings are made on remand, we vacate the determinations of contempt as to these devices.

AFFIRMED–IN–PART, VACATED–IN–PART, AND REMANDED.