**Joseph W. MORRIS and 1120–24 Industrial Partnership, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 92–590C.**

United States Court of Federal Claims.

Jan. 23, 1997.

Elaine K. Morris, Arlington, Virginia, attorney of record for plaintiffs.

Domenique Kirchner, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## ORDER

REGINALD W. GIBSON, Senior Judge.

Pending before this court is Plaintiffs' Motion Pursuant to RCFC 37, filed August 20, 1996. Plaintiffs seek to have this court order defendant to supplement its document production and impose certain sanctions against defendant for the alleged violation of the court's order compelling compliance with discovery requests. For the reasons stated below, we grant, in part, plaintiffs' motion.

The court also has before it Defendant's Motion for Civil Contempt, filed September 12, 1996. Defendant requests that the court direct that plaintiffs' motion be removed from the public record and filed under seal and, further, that the court impose appropriate sanctions for plaintiffs' alleged violation of the court's protective order, dated May 10, 1996. For the reasons stated below, we deny defendant's motion for civil contempt.

### Background

On January 31, 1996, plaintiffs filed a Motion to Compel Discovery, pursuant to RCFC 26(g), of relevant data pertaining to the employment history of Ms. Doris Rousey, a Small Business Administration (SBA) loan officer. More specifically, plaintiffs requested the production of the following:

> All documents pertaining to Doris Rousey's employment relationship with the Government, including but not limited to all position descriptions, performance plans, rating and reviews, records of promotion, reassignment, adverse actions, terminations, grievances, commendations and awards, for the period January 1, 1990 through the present.

This court was led to believe that the relevant data sought was contained in Ms. Rousey's personnel file. The plaintiffs also sought, in the same motion, to compel an answer to the following interrogatory:

> Pertaining to Doris Rousey, state the following information: 3(f): a description of every disciplinary action, evaluation, employee sanction, and/or complaint from customer, employee, or client concerning Doris Rousey's employment.

With respect to the interrogatory, the court directed that:

> If defendant is aware of any such specific information that is not contained in the listed documents [of Ms. Rousey's person-

nel file], it must so state and *identify* the responsive disciplinary action(s), sanction(s), or complaint(s). It may then review and state its objection(s) to *describing* the contents or substance of such document or information.

*See* Order dated March 19, 1996. In addition, while the court found that Ms. Rousey's employment history was relevant to the issues presented in this case, the court sought to assure itself that the information in the personnel file was not of a highly personal nature. Accordingly, the court stayed ruling on plaintiffs' motion to compel discovery, and directed defendant to file with the court, "Ms. Rousey's personnel file and the documents sought by the interrogatory for *in camera* inspection," to determine whether or not the personnel file contained "any privileged information of a 'highly personal' nature which should not be produced." *See* Order dated May 10, 1996.

Following its *in camera* inspection, the court issued an order on May 10, 1996. In said order the court concluded that the information sought was both relevant and was not of a highly personal, private, or sensitive nature. Therefore, the court required defendant to provide plaintiffs with copies of documents numbered 6, 13, 14, 15, and 27 through 33 from Ms. Rousey's personnel file, subject to a *sua sponte*, protective order, issued that same day. In said protective order, this court directed, in relevant parts, that:

1. The information contained in said documents shall only be used for the purposes of this litigation, to prove whether or not Ms. Rousey violated the obligation of good faith and fair dealing in connection with her dealings with plaintiffs regarding the Congress Street property, between the time of contract formation and closing (settlement).

2. The information contained in the personnel file shall be held in confidence and shall not be disclosed to anyone other than the parties and counsel, except to the extent that such disclosure is in conformity with paragraph 1.

*See* Order dated May 10, 1996. The parties agreed to comply with the protective order and thereafter, on May 21, 1996, defendant forwarded to plaintiffs' counsel copies of the specified documents.

Upon review of said documents from Ms. Rousey's personnel file, plaintiffs discovered several references to "negative notices." Plaintiffs subsequently, via letter, requested copies of the negative notices and a response to interrogatory No. 3(f). Defendant claims that it does not know of any negative notices issued during the relevant period of Ms. Rousey's dealings with plaintiffs, nor does defendant have knowledge or possession of any negative notices referred to by plaintiffs. Moreover, defendant, on July 9, 1996, in response to plaintiffs' interrogatory No. 3(f) stated, in pertinent part, that: "There has been no *actionable* complaints from customer, employee or client concerning [Ms. Rousey's] performance; her *personnel file* ... contains no complaints...." [1]

Subsequently, on August 20, 1996, plaintiffs filed a Motion Pursuant to RCFC 37, requesting that the court issue an order to compel the defendant to supplement its production of documents, for sanctions for its failure to do so and for its failure to answer the interrogatory as previously directed by the court. Defendant, thereafter, on September 12, 1996, filed its Opposition to Plaintiffs' Motion and a Motion for Civil Contempt, asserting that plaintiffs violated the court's Protective Order of May 10, 1996.

### Discussion

#### Plaintiffs' Motion Pursuant to RCFC 37

We will address each of plaintiffs' requests seriatim. We begin by discussing plaintiffs' request for the production of certain "negative notices" referred to in Ms. Rousey's personnel record. Next, we will evaluate the sufficiency of defendant's response to interrogatory No. 3(f). Lastly, the court will determine the propriety of imposing sanctions pursuant to RCFC 37(b)(2) against defendant for its alleged failure to comply with this court's order compelling discovery.

---

1. Defendant's Opposition to Plaintiffs' Motion Pursuant to RCFC 37 and Defendant's Motion for Civil Contempt, filed September 12, 1996 (Def.Br.), at 3–4 (emphasis added).

### 1. *Documents*

This court may, pursuant to RCFC 37(a),[2] issue an order to compel the parties to comply with discovery requests. We begin by noting, as we have in our previous orders, that Ms. Rousey's employment history, including activities that fall outside the scope of the formation and closing of the contract at issue here, are relevant to this case and, accordingly, are appropriate for discovery.

Here, plaintiffs seek further documentation pertaining to certain "negative notices" referred to in the documents produced by defendant pursuant to this court's order of May 10, 1996. The parties' briefs suggest that such notices are issued in connection with an Internal Control Review (CICR review). According to defendant:

> A CICR review was a review of the District Office as a whole and was issued to the District Director. After a CICR review was conducted, Gloria Pickett then was responsible for analyzing the CICR review and determining whether any deficiencies identified in the review were attributable to specific employees of the Portfolio Management Division, [such as Ms. Rousey], which Ms. Pickett headed.

Def.Br. at 9–10. Moreover, a performance evaluation worksheet states that an "[e]mployee is responsible for his or her work that is reviewed by the CICR." Def.Br. at App. 19. Accordingly, we find that a negative notice reflects, in some way, Ms. Rousey's work performance.

The documents, specifically those concerning Ms. Rousey's performance evaluations, suggest that the number of negative notices attributed to an employee is determinative of its rating for the "compliance" element of performance. For instance, Ms. Rousey's performance evaluation for the period of October 1, 1989 to September 30, 1990 indicates that she received a rating of "fully successful" for the performance element of compliance. Fully successful, in turn, is defined as "not receiving more than three negative notices." Thus, plaintiffs conclude, Ms. Rousey may have received as many as three negative notices during this period. In addition, a performance award recommendation, signed by Ms. Pickett on December 31, 1992, specifically refers to one negative notice issued to Ms. Rousey.

Defendant admits that Ms. Rousey received the negative notice referred to in the December 31, 1992 performance awarded recommendation.[3] Defendant, however, goes on to contend that it "has no knowledge or possession" of any other notices.[4] Further, defendant avers that plaintiffs have misconstrued the performance evaluations. Specifically, alleges defendant, an employee who did not receive any negative notices would not necessarily be entitled to receive a higher rating than "fully successful."

While it is clear to the court that an employee's overall performance rating is not solely determined by the total number of negative notices he/she may or may not have received, defendant fails to clarify what other factors are taken into consideration when evaluating an employee for the specific element of "compliance." Put differently, defendant does not explain how an employee who did not receive any negative notices could nevertheless obtain a rating of "fully

---

2. RCFC 37(a) provides in pertinent part as follows:

> (a) Motion for Order Compelling Discovery. A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:
>
> \*  \*  \*  \*  \*  \*
>
> (2) *Motion.* If ... a party fails to answer an interrogatory submitted under Rule 33, ... or ... in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request.

3. Defendant states that:

> Ms. Pickett believes that the unidentified deficiency mentioned in the SBA document ... was the expiration of the bond of Capital City Auctioneers prior to the auctioneer receiving a contract to conduct an auction for the SBA.

Def.Br. at 10.

4. Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion for a Finding of Civil Contempt, filed September 27, 1996 (Def.Reply Br.), at 5.

successful" for the element of compliance. Thus, we are left to agree with plaintiffs and find that some negative notices must have been issued to warrant the rating Ms. Rousey received for the element of compliance.

Because we find that a negative notice, as noted above, reflects Ms. Rousey's work performance, it falls within plaintiffs' initial document request for "documents pertaining to Ms. Rousey's employment with the government," even though said documents are not contained within Ms. Rousey's personnel file. However, to further assure ourselves that such notices are relevant and do not contain information of a highly personal nature, we order defendant to file with this court, on or before February 3, 1997, for an *in camera* inspection, any and all documents pertaining to negative notices related to Ms. Rousey's work performance. Accordingly, we stay a ruling on plaintiffs' motion to compel defendant to supplement its document production, pending an *in camera* inspection of the contested documents. Only after its inspection will the court order production of the documents to plaintiffs.

### 2. *Interrogatory*

As set forth above, defendant responded to plaintiffs' interrogatory No. 3(f) by asserting that there were no "actionable complaints." Plaintiffs assert that defendant's reply is unresponsive because neither its interrogatory nor the court's directive limited the inquiry to "actionable" or "valid" complaints, nor to those specifically located in Ms. Rousey's personnel file. Defendant alleges that its answer "meant that there was nothing that warranted any investigation, inquiry, or other action on [the] part [of Ms. Pickett, who], as Ms. Rousey's supervisor, was the person responsible for inquiring into such matters." Def. Reply Br. at 6.

■ We agree with plaintiffs and find that defendant was ordered to identify all complaints, actionable or otherwise, regardless of where they were located. Furthermore, defendant's failure to identify plaintiffs' complaint is significant because similar complaints may not have been considered "actionable," but would nonetheless be rele-

vant to the issues raised here. Further, defendant is cautioned against solely relying on Ms. Pickett to answer this interrogatory, unless, of course, any and all complaints lodged against Ms. Rousey by a customer, employee, or client concerning Ms. Rousey's employment, is filed with Ms. Pickett. Plaintiffs here are not seeking discovery only of those complaints which Ms. Pickett subjectively determined as valid. The more relevant complaints may be those that Ms. Pickett did not find valid, such as plaintiffs' complaint in the instant case.

Thus, we grant plaintiffs' motion to compel defendant to supplement its answer to interrogatory No. 3(f). Accordingly, defendant must state and identify *any and all* complaints by customer, employee, or client concerning Ms. Rousey's employment. It may then review and state its objection(s) to describing the contents or substance of such documents or information.

### 3. *Motion for Sanctions*

■ Plaintiffs also move this court to impose sanctions for defendant's failure to produce the requested documents and for its inadequate response to plaintiffs' interrogatory. Specifically, plaintiffs seek to preclude defendant from opposing its claim—

> that Ms. Rousey's employment history reveals disciplinary actions, evaluations, employee sanctions, and/or complaints from customer, employee, or client, and that such ... [history establishes proof of] motive, opportunity, intent plan, knowledge, absence of mistake, habit and/or routine practice in accordance with the Federal Rules of Evidence.[5]

Given the circumstances surrounding the instant motion, we do not believe that defendant's failure to produce the foregoing referenced documents or to effectively respond to plaintiffs' interrogatory warrants the imposition of such egregious sanctions pursuant to RCFC 37(b)(2) on this record.

■ To combat the abuse of the discovery process, RCFC 37(b) provides a wide spectrum of discovery sanctions "designed to discourage delay, waste of resources, and dilatory practices in favor of full disclosure of

---

5. *Plaintiffs' Motion Pursuant to RCFC 37*, filed August 20, 1996 (Pl.Br.), at 6.

relevant information prior to trial." *Applegate v. United States*, 35 Fed.Cl. 47, 56 (1996); *Advanced America Services, Inc. v. United States*, 32 Fed.Cl. 191, 193 (1994). Pursuant to RCFC 37(b)(2), "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court may make such order in regard to the failure as are just . . ." Such orders include designating certain facts as "established for purposes of the action" (RCFC 37(b)(2)(A)), or "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting such party from introducing designated matters in evidence" (RCFC 37(b)(2)(B)). The Rules also permit the court to impose costs against the party failing to obey the order. *See* RCFC 37(b)(2).

■■■■ There are two basic limitations upon a court's discretion to impose sanctions pursuant to Rule 37(b)(2). The rule expressly requires that the sanctions must be "just"; and the sanction must relate to the particular claims to which the discovery order was addressed. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S.Ct. 2099, 2106, 72 L.Ed.2d 492 (1982). In keeping with these limitations, some courts have held that the "flagrancy of a party's behavior must be directly proportionate to the severity of the sanction imposed." *Chilcutt v. United States*, 4 F.3d 1313, 1322 n. 23 (5th Cir.1993), *cert. denied sub nom, Means v. Wortham*, 513 U.S. 979, 115 S.Ct. 460, 130 L.Ed.2d 367 (1994). Accordingly, strong sanctions, such as issuing an order granting a claim and precluding a party from presenting evidence in opposition to it, should be imposed only for serious violations of discovery orders. *See Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (stating that issue-preclusion is "strong medicine"). Lastly, and more importantly, "no rule 37 sanction is appropriate when a litigant's failure is not the result of bad faith or misconduct." *Hendler v. United States*, 952 F.2d 1364, 1368 (Fed.Cir.1991).

As noted above, RCFC 37(b)(2) states that a party must "fail to obey" a pre-existing court order before a court may impose sanctions. *See Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1474 (D.C.Cir.1995) (concluding that Rule 37(b) could not support sanctions issued because district court failed to identify discovery order that ABC violated). Here, the court did not issue an order requiring defendant to produce documents pertaining to negative notices. In plaintiffs' initial motion to compel discovery filed January 31, 1996, they focused their efforts on seeking documentation from Ms. Rousey's personnel file. *See* Order dated March 19, 1996. Accordingly, this court directed the defendant to file with the court Ms. Rousey's *personnel file* for an *in camera* inspection. *See* Order dated March 19, 1996 (emphasis added). However, documentation pertaining to the negative notices apparently is not located in Ms. Rousey's personnel file. Moreover, while we are aware, of course, that the court also ordered the defendant to file with this court documents sought by interrogatory No. 3(f), defendant asserted in its letter to plaintiffs that the negative notices "are not disciplinary actions, evaluations, employee sanctions, and/or complaint from customers, employees, or clients concerning Doris Rousey's employment." [6] Thus, defendant was not obligated to submit such documents to the court.

Following its *in camera* inspection, this court ordered defendant to produce specific documents from Ms. Rousey's personnel file, with which defendant complied. *See* Order dated May 10, 1996. Therefore, we cannot conclude that defendant violated an order of the court and, accordingly, cannot impose RCFC 37(b)(2) sanctions.

■■■■ With respect to defendant's alleged failure to respond to plaintiffs' interrogatory, the decision as to whether to impose sanctions against defendant is less clear. Defendant's answer to plaintiffs' interrogatory is not responsive because it is couched in language that leaves open the question of whether or not complaints which were not considered valid or actionable had been lodged against Ms. Rousey. The plaintiffs' requested sanction is serious in and of itself, but even more so given the fact that the

---

6. Pl.Br. at App. 7.

pivotal issue in this case is whether or not there was a breach of the implied obligation of good faith and fair dealing. If we granted plaintiffs' sanction, it would be tantamount to establishing that such a breach did in fact occur. Thus, we must examine the record before us to determine whether or not defendant's actions are sufficiently serious enough to warrant the issuance of an order deeming that certain facts are established for purposes of this case.

To support its motion, plaintiffs cite to *Chilcutt v. United States.* There, the Fifth Circuit affirmed a district court's imposition of a discovery sanction deeming the plaintiffs' prima facie case established. 4 F.3d at 1320–22. While the court recognized that "willfulness is not required" for the issuance of such a sanction unless that sanction is equivalent to a dismissal or default judgment, it emphasized the seriousness of the infractions committed by the defendant. There, the government had repeatedly failed to fulfill its promises to comply with the court's discovery orders, intentionally withheld documents it knew existed, and knowingly made blatant misrepresentations to the district court about the existence of those documents. *Id.* at 1322–23. In addition, the district court had provided ample warnings to the defendant that failure to comply with the court's discovery order would result in dismissal or default judgment in favor of the plaintiff. *Id.* at 1321.

The circumstances here, however, are clearly distinguishable from *Chilcutt.* Upon reviewing the record before the court, we do not find any warnings issued to defendant nor comparable vexatious conduct displayed in *Chilcutt* that warrants the imposition of plaintiffs' requested sanction. At this time, we feel it is more appropriate to issue an order compelling defendant to fully respond to plaintiffs' interrogatory pursuant to our clarifying language.

■ However, we must emphasize, at this posture, that delaying tactics and inadequate answers will not be favorably viewed. The defendant is hereby notified that should the court determine that defendant has, without adequate reasons, failed to fully respond to outstanding discovery, the court will with

all due deliberate speed impose appropriate sanctions pursuant to RCFC 37(b)(2). This court's ability "to control the course of litigation with restraint and discretion is broad and powerful," and, as a consequence, argues strongly for forthwith responsive compliance. *Applegate,* 35 Fed.Cl. at 58 (citing *Chambers v. NASCO,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991)).

In sum, we (1) stay a ruling on plaintiffs' motion pursuant to RCFC 37 to compel defendant to supplement its document production pending an *in camera* inspection of such documentation, (2) grant its motion to compel defendant to supplement its answer to interrogatory No. (3)(f), and (3) deny plaintiffs' motion for sanctions.

### Defendant's Motion for Civil Contempt

■ In a civil contempt proceeding, the movant carries the heavy burden of proving a violation of a court's order by clear and convincing evidence. *Preemption Devices, Inc. v. Minnesota Mining & Manuf. Co.,* 803 F.2d 1170, 1173 (Fed.Cir.1986) (citing *KSM Fastening Systems, Inc. v. H.A. Jones Co.,* 776 F.2d 1522, 1524 (Fed.Cir.1985)). "If there is a fair ground of doubt as to the wrongfulness of the [party's] actions said to be in contempt, the [court] should not entertain the civil contempt proceeding or find contempt." *Preemption Devices,* 803 F.2d at 1173 (citing *MAC Corp. of America v. Williams Patent Crusher and Pulverizer Co.,* 767 F.2d 882, 885 (Fed.Cir.1985)). This is so because in such case clear and convincing evidence is wanting. In its present motion, defendant fails to carry its burden.

Here, defendant avers that plaintiffs violated this court's May 10, 1996, protective order "by filing in the public court record copies of portions of the performance rating for Ms. Rousey for the period 10/01/89 to 9/30/90 and the SBA recommendations for performance award, signed by Ms. Pickett, Ms. Rousey's supervisor, on December 31, 1992." Def.Br. at 15. Defendant further alleges that plaintiffs are not using this information for the purposes of proving that Ms. Rousey violated her duty of good faith and fair dealing, because the "information made public by plain-

tiffs has nothing to do with Ms. Rousey's actions between the time of contract formation, *i.e.,* August 22, 1991 (the auction date), and the time of closing, *i.e.,* November 25, 1991."[7] Thus, concludes defendant, plaintiffs have used the documents in a manner contrary to the court's protective order.

As noted *supra,* this court's protective order stipulated that Ms. Rousey's personnel records could only be used for purposes of this litigation to prove whether or not she breached her obligation of good faith and fair dealing in connection with her dealings with plaintiffs. The language used in said protective order, "for purposes of this litigation," contemplates, in addition to a trial on the merits, pretrial motions, such as plaintiffs' present motion to compel production of certain documents pursuant to RCFC 37. Furthermore, the restrictive language, limiting the use of the protected documents to prove only that Ms. Rousey breached a duty of good faith and fair dealing between the time of contract formation and settlement, does not preclude plaintiffs' conduct here. This limiting language bars, for instance, the use of the protected documents to prove Ms. Rousey breached a duty in connection with her dealings with a third party, or to prove someone other than Ms. Rousey breached a duty.

In this instance, plaintiffs filed the protected documents in the public record to persuade this court to compel defendant to supplement its document production to include those pertaining to certain "negative notices." The court has previously recognized that Ms. Rousey's employment history is " 'relevant to the subject matter' ... because [it] tends to show any financial or other interest that she may have had in seeing the Congress Street property settled or closed." Order dated May 10, 1996. It is clear to the court that plaintiffs are seeking to compel production of said documents to in fact prove that there was a breach of good faith and fair dealing on the part of Ms. Rousey. It is of no moment that the negative notices referred to were issued outside the time period of contract formation and closing, nor that plaintiffs also sought sanctions against defen-

dant in the same motion. Accordingly, because plaintiffs used the protected documents to obtain further documentation to buttress their allegation that Ms. Rousey breached her duty of good faith and fair dealing, we find that plaintiffs' actions come within the exception provided in paragraph 1 of the court's protective order. Thus, we deny defendant's motion for civil contempt sanctions.

IT IS SO ORDERED.